IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM MELVIN COLES,                              *

     PLAINTIFF,                                  *

          v.                             *          CIVIL ACTION NO.: RDB-11-00867

MICHAEL J. ASTRUE,                                 *
COMMISSIONER OF SOCIAL SECURITY,
                                                   *
     DEFENDANT.                                  *

\*     \*     \*     \*     \*     \*        \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

The *pro se* Plaintiff William Melvin Coles ("Coles") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Coles' claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c) of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33, 1381–1383. Pending before this Court is the Commissioner's Motion for Summary Judgment (ECF No. 19). Coles has not filed a response, and the time for doing so has passed. *See* Local Rule 105.2.a (D. Md. 2011). Upon review, this Court finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). As Coles is proceeding without counsel, his filing has been "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). For the reasons set forth below, the Commissioner's Motion for Summary Judgment (ECF No. 19) is GRANTED.

## BACKGROUND

Despite requests by this Court and a notification that his failure to respond could result in the dismissal of this case, Coles has failed to file a response to the Commissioner's Motion for Summary Judgment. *See* Letter Order, ECF No. 21, at 1. The time for doing so has passed. *See* Local Rule 105.2.a (D. Md. 2011). As Coles' two-paragraph Complaint does not provide a statement of facts, this Court has no choice but to accept the uncontested facts as stated in the Commissioner's Memorandum in Support of the Commissioner's Motion for Summary Judgment (ECF No. 19–1). Comm'r's Mem. at 1–9, ECF No. 19–1.

Coles filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 1, 2008, alleging that he been unable to work since June 27, 2008, due to "severe depression, migraines, and extreme fatigue." Comm'r's Mem. at 1. Coles' claim was denied at the initial level and at reconsideration. *Id.* On June 24, 2010, a hearing was held before an administrative law judge ("ALJ"). *Id.* at 2. In a decision dated August 19, 2010, the ALJ denied Coles' claim. *Id.*; Compl. at 2 ¶ 5, ECF No. 1. The Appeals Council has denied Coles' request for review, making the ALJ's opinion the final decision of the agency. *Id.*; Comm'r's Mem. at 2. Coles filed this action on April 1, 2011, seeking review of the agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The role of this Court is not to review a plaintiff's claim *de novo* or to reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Instead, this Court must determine upon review of the whole record whether the ALJ's decision is supported by "substantial evidence" and is a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453,

1456 (4th Cir. 1990) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is "more than a mere scintilla of evidence but . . . less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion [,] . . . were the case before a jury." *Johnson v. Califano*, 434 F. Supp. 302, 307 (D. Md. 1977) (quoting *id*; citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). The ALJ's decision "must be upheld if it is supported by substantial evidence." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) (citing *Richardson*, 402 U.S. 389, 401 (1971)).

In addition to reviewing the ALJ's decision to determine whether it it supported by substantial evidence, this Court must also determine whether the ALJ correctly applied the law. *Hays*, 907 F.2d at 1456. Upon review of the ALJ's decision, this Court may modify, affirm, or reverse the decision and may remand the case for a rehearing. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *Coffman*, 829 F.2d at 514; *Vitak v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971); 42 U.S.C. §§ 405(g), 1383(c)(3).

The Commissioner has set forth regulations that describe a five-step sequential evaluation procedure for determining whether a claimant is disabled. *See Bowen v. Yuckert*, 482 U.S. 137 (1987); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at the first four steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). First, the ALJ determines whether the claimant is engaged in "substantial gainful activity," as defined in 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.* If the claimant is engaged in a substantial gainful activity, the claimant is found to be not disabled, and the ALJ does

not review the claim further.  20 C.F.R. §§ 404.1520(a), 416.920(a).  However, if the claimant

is not engaged in a substantial gainful activity, the ALJ turns to the second step.

The second step requires the ALJ to examine the physical and/or mental

impairments alleged by the claimant to determine whether any of them meets the durational

and severity requirements set forth in 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521, 416.909,

416.920(c), 416.921.  If any impairment meets the durational and severity requirements, the

ALJ's analysis turns to the third step.

At the third step, the ALJ considers whether the impairment or impairments,

severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, known as the Listing of Impairments ("Listings").  If one of the

Listings is met, the claimant is found to be disabled, without consideration of age, education,

or work experience.  However, if a Listing is not met, the ALJ will proceed to the fourth

step.

At the fourth step, the ALJ considers whether the claimant retains the residual

functional capacity to perform past relevant work.  If the ALJ finds that a claimant retains

the residual functional capacity to perform past relevant work, then the claimant will be

found to be not disabled.  However, if a determination is made that the claimant is incapable

of performing past relevant work, then the ALJ moves to the fifth and final step.

The burden of proof at the fifth and final step shifts to the Commissioner.  *Pass*, 65

F.3d at 1203 (citation omitted).  At this step, the ALJ considers whether the claimant is

capable of performing some work.  The process the ALJ must use to make this

determination depends on the type of impairment, or impairments, the claimant has.  An

impairment is either "exertional" or "nonexertional." An "exertional" impairment is an impairment affecting the claimant's ability to meet the strength demands of certain jobs. 20 C.F.R. §§ 4–4.1569.a, 416.969a. A "nonexertional" impairment is a "limitation that is present whether a claimant is attempting to perform the physical requirements of the job or not," Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983), and is "not manifested by a loss of strength or other physical abilities." Grant v. Schweiker, 699 F.2d 189, 192 (1983).

If the claimant suffers solely from exertional impairments, then the Medical-Vocational Guidelines ("Guidelines") apply to determine of whether a claimant is capable of performing some work. 20. C.F.R. Part 404, Subpart 4, Appendix 2. An ALJ applying the Guidelines must examine the claimant's age, education, work experience, and residual functioning capacity to determine which rule pertains; the rule then directs a conclusion as to whether a claimant is disabled or is capable of some work. However, if the claimant does not suffer from exertional impairments, or suffers from a combination of exertional and nonexertional impairments, then the Guidelines do not apply. Instead, the ALJ must elicit the help of a vocational expert to determine whether the claimant is capable of some work. See Taylor v. Weinberger, 512 F.2d 664, 668–69 & n. 9 (4th Cir. 1975). If the claimant is capable of performing some work, he is found to be not disabled; however, if he is not capable of performing any work, he is found to be disabled.

## THE ALJ's DECISION

Upon review of the medical records and testimony from the hearing, the ALJ evaluated Coles' claim using the five-step sequential evaluation procedure and found that Coles was not disabled. Comm'r's Mem. at 9–12, ECF No. 19–1.

At step one of the sequential evaluation procedure, the ALJ found that Coles was not engaged in a substantial gainful activity.  Accordingly, the ALJ proceeded to step two, at which he found that Coles' "affective disorder" met the severity and durational requirements of step one, but that Coles had no other impairments.  *Id.* at 10.  As Coles' "affective disorder" met the requirements of step two, the ALJ proceeded to step three, at which he determined that Coles' affective disorder did not meet or equal an impairment in the Listing of Impairments ("Listings").  *Id.* at 11.  Thus, the ALJ turned to step four, at which he found that Coles could not perform his past relevant work.  *Id.* at 12.  As Coles was found to be incapable of performing his past relevant work, the ALJ turned to the fifth and final step, at which he found that Coles was capable of performing some work and thus was "not disabled."  *Id.* at 16.

## SUMMARY OF EVIDENCE

Coles seeks to allege that he is disabled due to "severe depression, migraines, and extreme fatigue."  Comm'r's Mem. at 1, ECF No. 19–1.  The record contains evidence from several sources: the JAI Medical Center; Healthcare for the Homeless; the University of Maryland Medical Center; Stephen A. Hirsch, M.D.; P. Sokas, M.D.; and Dr. Fan, from Key Point Health.

A report from the JAI Medical Center ("JAI"), dated July 2, 2008, states that Coles had minimal exertional limitations but suffered from depression, had "moderate restriction in activities of daily living and maintaining social functioning . . . and had three or more episodes of decompensation."  Comm'r's Mem. at 2.  The report also states that "Coles' condition would prevent him from working from July 2, 2008, to October 2, 2008."  *Id.* at

2–3.  Notably, the report does not provide any "comments or explanation for the mental limitations identified."  *Id.* at 3.

Coles visited Healthcare for the Homeless three times during August 2008 and met with healthcare professionals to talk about his depression and fatigue.  Comm'r's Mem. at 3. Coles reported that "he heard voices" and that he had "some suicidal ideation but no current plans to commit suicide."  *Id.*  Healthcare for the Homeless administered mental status exams of Coles, which revealed him to be "alert; cooperative; oriented to person, place and time; [to have] fair insight and judgment" and "to be cognitively intact with full-range affect."  *Id.*  Coles told Healthcare for the Homeless that he had tried counseling and Prozac but had not found them helpful or desirable.  *Id.*  He also "reported alcohol, tobacco, and marijuana use."  *Id.*  During his last visit, Coles discussed "family dynamics" and stated that "he needed housing as soon as possible, as well as income, but that he was unsure if he wanted to continue receiving services at Healthcare for the Homeless."  Comm'r's Mem. at 3–4.

Coles visited the Emergency Room at the University of Maryland Medical Center thirteen times between September 2008 and January 2009, mostly with complaints of relatively minor physical ailments, such as pain in his teeth and swollen feet.  *Id.* at 4.  None of his visits to the emergency room "revealed any lasting physical impairments."  *Id.*  During the only visit in which he complained of any kind of mental problem, he reported "a cough and suicidal thoughts" and left with a diagnosis of "an upper respiratory infection and depression."  *Id.*  Although "his care plan was listed as psychiatric evaluation, . . . there is no indication he underwent such an evaluation at the University of Maryland Medical Center."

*Id.*

On February 18, 2009, Coles received a psychiatric evaluation from Stephen A. Hirsch, M.D.  Comm'r's Mem. at 4.  Hirsch noted that Coles had been in "outpatient mental health treatment . . . three or four times between 2000 and 2007," each only for a brief period, and "was not on any medications at the time of the evaluation." *Id.*  Hirsch observed that Coles was "depressed." *Id.* at 4.  Hirsch also noted that, while Coles had an ability to "understand simple and complex instructions," he "had a long-term history of conflict with others." *Id.* at 5.  Hirsch added that Coles was "unpleasant" to talk to and "at times was giving incorrect answers [to Hirsch's questions] when he knew there were others he could give." *Id.* at 4–5.  Hirsch's diagnosis of Coles was "a history of major depressive disorder, and possible bipolar disorder, with some lack of compliance with medical treatment, some degree of marijuana dependence; and a GAF score of 45 to 50."[1] *Id.* at 5.  Hirsch noted "no episodes of decompensation of significant duration." *Id.* at 11.

On February 27, 2009, P. Sokas, M.D., prepared a Psychiatric Review Technique form "in which he diagnosed Mr. Coles with bipolar disorder, mixed [*sic*]; narcissistic personality disorder; and cannabis dependence."  Comm'r's Mem. at 5.  Sokas noted that "Coles had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation." *Id.*  Sokas additionally

---

[1]   A mental health professional or physician who assigns an individual a GAF, or "Global Assessment of Functioning," score in a range of 45 to 50 is indicating that the individual shows "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning."  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

noted "that Mr. Coles was not significantly limited in understanding and memory, and was no more than moderately limited in sustained concentration and persistence, social interaction or adaptation." *Id.* In conclusion, Sokas noted that Coles' " 'combined conditions may impose  moderate limitations on concentration, reliability, task persistence, work-related social functioning and adaptability' but that Mr.  Coles 'retained the ability to learn and carry out routine tasks requiring only limited interpersonal interaction.' " *Id.*

Finally, Coles "attended outpatient therapy sessions at Key Point Health for depression regularly between February 23, 2010 and June 16, 2010." *Id.* Coles' "initial symptoms [were] listed as depression, tearful, hopeless/helpless, sleep disturbance, suicidal ideations, excessive drug use, fatigue, relationship issues, difficulty staying on task, easily annoyed and victim of physical abuse." Comm'r's Mem. at 5–6. At subsequent visits, Key Point described Coles as "dysthymic." *Id.* at 6. On June 21, 2010, Dr. Fan from Key Point Mental Health prepared a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" after having seen Coles "only one previous time." *Id.* Fan reported that "Coles had fair ability to use judgment; function independently; understand, remember and carry out simple job instructions; and maintain personal appearance," that "Coles had poor ability to follow work rules;" to interact with other people, including "supervisors;" and to "carry out complex . . . [or] detailed . . . job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability." *Id.* Pan also opined that "alcoholism and drug abuse were not contributing factors." Notably, "Dr. Pan did not cite any evidence to support the limitations expressed in [his] opinion." *Id.*

At Coles' hearing, the ALJ sought the testimony of a vocational expert ("VE")

"regarding Mr. Coles' ability to perform his past work and other work existing in the national economy." *Id.* at 6. The VE "testified that Mr. Coles' past relevant work as librarian was light, skilled and as a billing clerk was sedentary, semi-skilled." Comm'r's Mem. at 6. The ALJ asked the VE to "assume a hypothetical individual with the same age, education and work experience as Mr. Coles, who could perform work at all exertional levels, with the following limitations: mildly limited in activities of daily living; moderately limited in social interactions; moderately limited concentration, persistence and pace; and limited to occasional contact with the public and coworkers." *Id.* at 7. The ALJ next asked "whether such an individual could perform any work existing in the regional or national economy." *Id.* The VE "testified that Mr. Coles could not do any of his past work" as a librarian or a billing clerk but that an individual in Coles' circumstances "could work as a hand packager (900,000 jobs in the national economy and 9,300 in the local economy); warehouse laborer (450,000 jobs in the national economy and 4,900 jobs in the local economy); or janitor (2,000,000 jobs in the national economy and 30,000 jobs in the local economy." *Id.*

## ANALYSIS

Coles states in his Complaint that the "ALJ abused his discretion, made errors of law, and made findings and a decision not supported by substantial evidence." Compl. at 3 ¶ 6, ECF No. 1. Specifically, Coles contends that "[t]he ALJ did not properly consider the claimant's nonexertional limitations due to mental health problems, failed to pose proper and complete hypothetical questions to the vocational expert, improperly made medical conclusions without the benefit of consultation with medical experts, and improperly

discounted the credibility of Plaintiff's testimony."[2]  *Id.*

Although the Complaint's allegations are less than clear, the Complaint does not seem to contest the ALJ's findings at steps one and four, which are in favor of Coles.  *See* 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*; 20 C.F.R. Part 404, Subpart P, Appendix 1. Furthermore, Coles apparently does not argue that the ALJ erred at step two, in which the ALJ determined that Coles' "affective disorder" was the sole severe impairment that Coles had—i.e., that Coles had no physical impairments.   Comm'r's Mem. at 1, 10, 11. Accordingly, this Court construes the Complaint as seeking to allege that the ALJ made improper findings at both of the remaining steps, three and five.   Specifically, Coles contends that the ALJ "improperly discounted the credibility of [Coles'] testimony" at both steps.  Compl. at 3 ¶ 6.   Additionally, Coles contends that the ALJ "improperly made medical conclusions" at step three "without the benefit of consultation with medical experts."  *Id.*  Finally, Coles maintains that at step five, the ALJ "failed to pose proper and complete hypothetical questions to the vocational expert."  *Id.*

## I.   WHETHER THE ALJ IMPROPERLY DISCOUNTED THE CREDIBILITY OF COLES' TESTIMONY

Coles contends that the ALJ "improperly discounted the credibility of Plaintiff's testimony" at steps three and five.  Compl. at 3 ¶ 6.  In assessing Coles' alleged disability, "[t]he ALJ gave great weight to the opinions of the state agency physicians, Dr. Hirsch and Dr. Sokas, because their opinions were consistent with the medical record and clinical findings."  Comm'r's Mem. at 12.  According to the ALJ, the medical record and clinical

---

[2]  Coles also contends that "there is new and material evidence," but has not identified any.  Compl. at 3 ¶ 6.

findings (collectively "objectively medical evidence") indicated "some work-related limitations, but failed to document disabling limitations." *Id.* Essentially, the objective medical evidence showed that Coles had a history of depression, but that he had little history of treatment or emergency room visits for mental health problems, and that he was found as late as 2010 to be "not at risk." *Id.*

The objective medical evidence contradicted the opinion of the treating source, Dr. Fan. Additionally, Dr. Fan did not explain how he reached his medical conclusions or point to any treatment notes from the "numerous sessions" at Key Point Health to support his opinion. Accordingly, the ALJ found Fan's opinion unreliable and assigned it "no weight." 20 C.F.R. §§ 404.1527(d)(2), 404.1527(d)(4), 416.927(d)(2), 416.927(d)(4). However, the objective medical evidence was consistent with Dr. Hirsch's findings that Coles was depressed but could "understand simple and complex instructions" and had the skills, abilities, and capabilities to work; and with Dr. Sokas' findings that Coles did not have any marked limitations, was "no more than moderately limited" in any area of work-related functioning, and had the ability to learn and carry out routine tasks requiring limited interpersonal interaction. Comm'r's Mem. at 4–5. Thus, the ALJ assigned the opinions of Drs. Hirsch and Sokas "great weight." Comm'r's Mem. at 12. As the opinions of Dr. Hirsch and Dr. Sokas were consistent with the objective medical evidence, the ALJ properly relied on them. *See* 20 C.F.R. §§ 404.1527(d)(4); 416.927(d)(4).

Coles' opinion of the severity of his own impairment and its effects on his functioning were even less consistent with the other evidence than the findings of Dr. Fan. Specifically, Coles' subjective medical complaints contradicted the opinions of Dr. Hirsch

and Dr. Sokas, the objective medical evidence, and the evidence provided by Coles' reported

"daily activities."  In addition, the ALJ noted that Coles' credibility was questionable because

he had intentionally given incorrect answers to some of Dr. Hirsch's questions during his

consultative examination and because it appeared that Coles had requested meetings with

mental health professionals at Healthcare for the Homeless in an effort to obtain housing

rather than to seek treatment.  Based on the above, the ALJ properly concluded that Coles'

testimony as to the severity of his own impairment and its effects on his functioning was not

fully credible.

## II.  WHETHER THE ALJ IMPROPERLY MADE MEDICAL CONCLUSIONS WITHOUT CONSULTING MEDICAL EXPERTS

Coles also contends that at step three, the ALJ "improperly made medical

conclusions without the benefit of consultation with medical experts."  Compl. at 3 ¶ 6.  At

that step, the ALJ "found that Mr. Coles' affective disorder did not meet or equal any of the

impairments mentioned in the [Listings], including [L]istings 12.04 (affective disorders),

12.08 (personality disorders) and 12.09 (substance addiction disorders)."  Comm'r's Mem. at

11.  Although the ALJ noted that Coles "has a medical condition mentioned in the Listings,"

he also noted that Coles "did not meet all of the requirements of any listing."  Comm'r's

Mem. at 11.  Considering all three listings together, the ALJ found that Coles had "mild

restrictions in activities of daily living; moderate difficulties in social functioning; and

moderate difficulties with regard to concentration, persistence, and pace."  Comm'r's Mem.

at 11.  Additionally, the ALJ found that "Coles had experienced no episodes of

decompensation of extended duration."  *Id.*  Because Coles "did not have marked limitations

in two or more areas, or a marked limitation in one area with repeated episodes of

decompensation,"[3] the ALJ concluded that Coles' impairments did not meet or equal a Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.   In support of the medical conclusions the ALJ reached at step three, the ALJ cited Dr. Hirsch's notes from Hirsch's consultative examination.   Accordingly, Coles' assertion that the ALJ "improperly made medical conclusions without the benefit of consultation with medical experts" is baseless.

The ALJ applied the correct law at step three and made findings that were supported by "substantial evidence,"   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); 42 U.S.C. §§ 405(g), 1383(c)(3)),   as the evidence from Dr. Hirsch's notes is "evidence which a reasoning mind would accept as sufficient" to support the conclusion that Coles' impairment did not meet a Listing. *Johnson v. Califano*, 434 F. Supp. 302, 307 (D. Md. 1977) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966);   citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)).   Accordingly, the ALJ's finding at step three "must be upheld." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) (citing *Richardson*, 402 U.S. 389, 401 (1971)).

## III.   WHETHER THE ALJ FAILED TO POSE PROPER AND COMPLETE HYPOTHETICAL QUESTIONS TO THE VOCATIONAL EXPERT

Last, Coles argues that the ALJ failed "to pose proper and complete hypothetical questions to the vocational expert."   Compl. at 3 ¶ 6.   An ALJ has wide latitude to pose hypothetical questions of his own device and is free to accept or reject restrictions suggested by a claimant, as long as there is substantial evidence to support the ultimate question.

---

[3]   "Marked limitations" are limitations more severe than moderate limitations.   20 C.F.R. Part 404, Subpart P, Appendix 1.

*Hammond v. Apfel*, 5 F. App'x 101, 105 (4th Cir. 2001) (citing *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  When posing a hypothetical question to the vocational expert ("VE"), the ALJ must fairly set out all impairments the ALJ finds to exist, based upon all evidence in the record.  *See Walker v. Bowen*, 889 F.2d 47, 50–51 (4th Cir. 1989).  In this case, the ALJ identified "the following limitations: mildly limited in activities of daily living; moderately limited in social interactions; moderately limited concentration, persistence and pace; and limited to occasional contact with the public and coworkers."  Comm'r's Mem. at 7.  The ALJ next asked the VE to "assume a hypothetical individual with the same age, education and work experience as Mr. Coles, who could perform work at all exertional levels, with the following limitations: mildly limited in activities of daily living; moderately limited in social interactions; moderately limited concentration, persistence and pace; and limited to occasional contact with the public and coworkers."  *Id.* at 7.  The ALJ then asked "whether such an individual could perform any work existing in the regional or national economy."  *Id.*  As noted above, the ALJ's findings with respect to the severity of Coles' affective disorder are supported by substantial evidence.  Because the ALJ's hypothetical question reflected these findings accurately and fully, it was proper.

In response to the ALJ's hypothetical question, the VE testified that Coles was incapable of performing any of his past work as a librarian or a billing clerk but that an individual in Coles' circumstances "could work as a hand packager (900,000 jobs in the national economy and 9,300 in the local economy); warehouse laborer (450,000 jobs in the national economy and 4,900 jobs in the local economy); or janitor (2,000,000 jobs in the national economy and 30,000 jobs in the local economy."  Comm'r's Mem. at 7.  Based on

this testimony, the ALJ found that Coles, despite his impairments, could perform work that exists in significant numbers in the national economy and was thus *not disabled* at step five of the sequential evaluation procedure.

It appears that the ALJ applied the correct law at step five and that his finding was supported by "substantial evidence," *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); 42 U.S.C. §§ 405(g), 1383(c)(3)), as the VE's testimony is "evidence which a reasoning mind would accept as sufficient" to support the conclusion that Coles could perform other work. *Johnson*, 434 F. Supp. at 307 (quoting *Laws*, 368 F.2d at 642; citing *Blalock*, 483 F.2d at 775). Accordingly, the ALJ's finding at step five "must be upheld." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) (citing *Richardson*, 402 U.S. 389, 401 (1971)). Furthermore, as the ALJ applied the correct law and made findings supported by substantial evidence at all five steps, his decision is upheld and the Commissioner's Motion is GRANTED.

## CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment (ECF No. 19) is GRANTED.

A separate Order follows.

Dated:       July 31, 2012

                                                            /s/_____

                                                            Richard D. Bennett
                                                            United States District Judge